THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEIDRE BROWN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—3440

Opinion filed April 25, 1990.

Randolph N. Stone, Public Defender, of Chicago (Sam Majerowicz, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Karlene Behringer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:
Following a bench trial, defendant, Deidre Brown, was convicted of two counts of home invasion and one count each of robbery and residential burglary, and was given concurrent sentences of six years

for the two counts of home invasion and four years for robbery and residential burglary. Defendant raises the following issues on appeal: (1) whether her sixth amendment right to effective assistance of counsel was violated; (2) whether the State failed to prove beyond a reasonable doubt that defendant was guilty on an accountability theory; (3) whether the State proved beyond a reasonable doubt that a dangerous weapon was used in the commission of the home invasion; and (4) whether the trial court erred in imposing judgment on two counts of home invasion.

The evidence presented at trial established that on January 2, 1987, the 75-year-old complainant, Richard Burns, lived in a first-floor apartment located at 7850 South Ada in Chicago. About 3 p.m., a woman named Selina, whom complainant had known for several months, went to his apartment accompanied by defendant. Selina introduced defendant to complainant. Complainant testified that Selina asked him for $2.60 so she could buy food. Complainant had just cashed a $400 retirement check and had the money in his left rear pants pocket. He removed all of the money from his pocket in the presence of Selina and defendant and gave Selina $2. Complainant put the rest of the money back in his left rear pocket and the women left. About 4 p.m. that same day, defendant returned to complainant's apartment and asked for ingredients so she could cook the chicken she had just bought. Complainant gave her salt, but defendant left without it. About 6:30 p.m., defendant returned, saying that she was looking for Selina. At this time, another woman, named Bebe, was in complainant's apartment. After he let defendant in, he locked the door. Defendant sat down on a couch in the living room near a window and looked out the window, telling complainant that she was watching for Selina because Selina had her baby. Complainant sat on the couch breathing oxygen through a mask. About 10 to 15 minutes later defendant said, "[t]here's Selina down there" and then jumped up and ran over to the door. In the process, she became tangled in the cord connecting complainant's mask to the oxygen tank. When defendant reached the door, she unlocked it and two men entered the apartment. At least one of the two men was armed with a gun. Complainant grabbed the man with the gun, holding the man with one hand and the gun with the other hand. The man yelled for help from his partner. The other man ran behind complainant and hit him on the back of the head with a hard object. Complainant then released the man with the gun. Meanwhile, the other man went directly to complainant's left rear pants pocket and removed its contents, including the $400 in cash. The two men then ran out the front door, following

behind defendant. Several minutes later Bebe, who ran screaming from the apartment shortly after the two men entered, returned to complainant's apartment with the police. After talking to the police, complainant left his apartment to go to his nephew's work place in order to borrow some money. En route he saw a police car. He walked up to the car, looked inside, saw defendant and told the police, "[s]he's the one."

Police officer Timothy Cullinan testified that about 7 p.m. on January 2, he and his partner responded to a police call of a robbery at 7850 South Ada. He interviewed Bebe and complainant. Bebe provided the names and descriptions of the two women who had been in complainant's apartment. The officer then went to defendant's address, which was just down the street from the complainant. As he arrived at defendant's apartment, he saw a female exiting the building. When she identified herself as Deidre Brown, he arrested her, placed her in the squad car and drove to the corner of 79th and Ada. While parked at that location, complainant approached the car, looked inside and said, "[t]hat's the one who was in my apartment." Defendant was then taken to the police station.

Detective William Marley testified that pursuant to his investigation of the incident he interviewed defendant. At first she denied any knowledge of the incident, but after being read her rights and informed of the seriousness of the offense, she agreed to talk to him. She told the detective that earlier that day she and Selina went to complainant's apartment to borrow money to buy food. As he handed them $2, the women observed that he removed the money from a large roll of bills that he had taken from his back pants pocket. After they left the apartment, Selina suggested that they rob complainant. Defendant told the detective that Selina suggested that defendant return to complainant's apartment and wait about 15 minutes after which somebody would come to the door. Defendant was then to unlock the door to the apartment and let the person(s) into the apartment. Although defendant was to have received $20 in return for letting the offenders into the apartment, she told the detective that the two men ran out of the apartment without giving her any money.

On direct examination defendant testified that she accompanied Selina to complainant's apartment in order to borrow money to buy chicken. She saw him remove a large roll of money from his pocket and hand Selina $2. Complainant told them to bring the chicken back to his house and cook it there because he wanted the two women to keep him company. Defendant later returned to complainant's apartment to see if he had ingredients necessary to prepare the chicken.

At that time there was no plan to rob him. However, when asked whether there was a plan to rob complainant, defendant testified as follows:

> "Well, she [Selina] had said something about she was going to see if she could get some money from him, and I figured, I knew it was going to be something. I figured she was going to go in his pocket or he was going to go to bed and she was going to go in his pocket or something like that. I didn't know she was going to have somebody come to his house."

Defendant testified that when she opened the door to complainant's apartment, the two men who entered the apartment looked familiar. According to defendant, as they entered the apartment, they pushed her and complainant ran to the door. One of the men grabbed his hand, and the other man started going through complainant's pockets. Defendant left the room to go find a telephone. When she could not find a telephone in the apartment, she returned to the living room, where she saw them push complainant and then run out of the room. She testified that complainant seemed to be in a state of shock and she was frightened. She left complainant's apartment and went home. Defendant also testified that she did not see either of the men carrying a gun.

On cross-examination defendant testified that after she went to complainant's apartment the second time to see if he had the ingredients to prepare the chicken, she went back to the place where she was staying, at 7927 Ada, where Selina had also spent a few nights. Defendant then went looking for Selina because Selina had defendant's son. When defendant could not find her, she returned home. Defendant was then going to return to complainant's apartment to look for Selina. However, before doing so defendant went to a pool hall where she thought Selina might be. On her way from the pool hall to complainant's apartment, she saw Selina. She and Selina talked about taking money from complainant. Selina told defendant to go to complainant's apartment and wait for about 15 minutes and Selina would meet her there. Defendant testified that she thought that Selina was going to come to complainant's apartment, go to bed with him and then take the money out of his pockets. Defendant stated that she did not know that two men were going to go to complainant's apartment and take the money. Defendant denied telling Detective Marley that she was supposed to open complainant's door and let someone in to rob him. She also testified that Selina was going to give defendant $20 to repay a loan and not as payment for helping to rob complainant. However, defendant did admit telling the detective

that Selina told her that if she could get more money she would give defendant more money.

In finding defendant guilty, the trial court stated as follows:

"Based on the evidence that I heard, the testimony of the witnesses who testified, including the defendant, the theory of the State is that of accountability. Deidre Brown didn't actually perpetrate the physical robbery, but she aided, abetted and facilitated that commission and, under that section of the [s]tatute, 5—2, she has to do so with the intent to commit a specific crime.

I agree with Mr. Moriarity [defense counsel] that the State had failed to prove that she knew that there would be the existence of a gun.

However, based on all the evidence as to the charge of home invasion, finding of guilty, judgment entered on the finding. As to the charge of armed robbery, there is a finding of guilty to the lesser included offense of robbery. As to the charge of aggravated battery, finding of not guilty. As to the charge of armed violence, Category I, finding of not guilty. As to the charge of residential burglary, there is a finding of guilty and judgment is entered on those findings."

■■ ■ Defendant first contends that she was denied effective assistance of counsel evidenced by the following remarks made by her attorney during closing arguments:

"I would suggest to the Court that if Deidre Brown is guilty, it goes to show guilty of bad company, bad companions, but that her participation would have been to one of—would have been a solicitation or conspiracy to commit a robbery and nothing else."

Defendant argues that by conceding that she was guilty of solicitation or conspiracy to commit robbery, her attorney was, in effect, conceding that she was accountable for all of the offenses for which she was charged. In considering defendant's contention, we are guided by the general rule of law that a defendant claiming ineffective assistance of counsel must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Hattery* (1985), 109 Ill. 2d 449, 461, 488 N.E.2d 513.) Defendant relies on *People v. Hattery* (109 Ill. 2d 449, 488 N.E.2d 513) for its holding that counsel may not concede his client's guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, unless the

record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy. However, subsequent cases have determined that the *per se* exception delineated in *Hattery* should be applied only when the facts of the case fit squarely within those found in *Hattery*, and that in all other cases the case-by-case, two-part test set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, should continue to be applied. (*People v. Bone* (1987), 154 Ill. App. 3d 412, 415-16, 506 N.E.2d 1033.) Moreover, it is not automatically ineffective assistance of counsel when trial counsel concedes his client's guilt on offenses in which there is overwhelming evidence of his client's guilt when a vigorous defense is presented on other offenses. (*People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072.) Rather, each allegation of ineffective assistance of counsel must turn upon its own peculiar facts. (*People v. Weger*, 154 Ill. App. 3d at 710.) In addition, courts have recognized the legitimacy of admitting guilt to less than all counts in a multicount indictment or less than all elements of the crime(s) charged where evidence of defendant's guilt is overwhelming and counsel's strategy is to win a reduced sentence. (*People v. Gill* (1988), 169 Ill. App. 3d 1049, 1055, 523 N.E.2d 1239.) Such a tactical decision is not objectionable *per se*, and may even be viewed as good defense strategy when appropriate. *People v. Gill*, 169 Ill. App. 3d at 1055.

Applying these principles to the instant case, we first comment that the facts differ from those found in *Hattery*. In *Hattery*, defendant was charged with murder and pleaded not guilty, and yet defense counsel admitted during opening statement that the defendant had done everything the prosecution alleged in its opening statement. Defense counsel even went so far as to state that the defendant was not asking the jury to find him not guilty and that the jury would in fact find defendant guilty. Moreover, during trial, defense counsel advanced no theory of defense, presented no evidence and made no closing argument. It is noteworthy that the instant case was a bench trial and not a jury trial. Also, defense counsel did not precisely state that defendant was guilty of a particular offense, but, rather, stated that if defendant was guilty of any offense, she was guilty of conspiracy to commit a robbery. Unlike the defendant in *Hattery*, who was charged with only one offense to which his attorney expressly stated that he was guilty, defendant in the present case was charged with two counts of home invasion, and one count each of armed robbery, aggravated battery, armed violence and residential burglary. Consequently, defense counsel's statement during closing argument suggested that defendant, if guilty at all, was only guilty of a lesser-included offense

of one of the several charges made against her. Defense counsel did so following a trial at which substantial evidence of defendant's guilt was presented. Complainant testified that a few hours before the incident defendant had been in his apartment and had seen him remove a large sum of money from his left rear pants pocket, that just prior to the incident defendant had been in the apartment for about 15 minutes, after which she went to the front door, unlocked it and let two men into the room, and that the man who removed the money from complainant's pocket did not first search complainant for the money but went directly to the pocket containing the money. Detective Marley testified that defendant told him that Selina suggested that they rob complainant's apartment, that Selina told defendant to go to complainant's apartment, wait 15 minutes, after which someone would come to the door, and that defendant should unlock the door and let them in. Defendant herself testified that she and Selina had talked about taking complainant's money.

■ Having previously explained our rejection of the *per se* exception to the *Strickland* test as set out in *Hattery*, we now apply that test to the instant case. In view of the strength of the evidence recited above, we find the probability of a different verdict, even without counsel's alleged error, to be negligible. Moreover, since defendant was charged with several offenses and the statement challenged by defendant as constituting ineffective assistance was a suggestion of defendant's guilt to less than all of the offenses charged, we cannot say that counsel's representation fell below an objective standard of reasonableness, especially in view of the strong and convincing evidence presented by the State. ˙

We next consider defendant's contention that the State failed to prove beyond a reasonable doubt that defendant had the specific intent to promote or facilitate the commission of any of the offenses for which she was convicted. Defendant argues that she thought that a theft by an act of deception was going to occur, believing that Selina was planning to go to bed with complainant and then take the money out of his pants pocket. She further contends that when she opened the door, she had no idea that anyone was at the door, that she had opened the door only so that she could leave the apartment and that she had no knowledge that the offenses were going to occur until they actually took place.

■ A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or

commission of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) To be accountable for the acts of another, one must have a specific intent to promote or facilitate the commission of a crime. (*People v. Bolden* (1978), 59 Ill. App. 3d 441, 447, 375 N.E.2d 898.) The State is deemed to have met its burden of proof that an accused possessed the specific intent to promote or facilitate the commission of the crime where it establishes beyond a reasonable doubt that defendant shared the criminal intent of the principal, or that there was a community of unlawful purpose. (*People v. Hill* (1977), 53 Ill. App. 3d 280, 284, 368 N.E.2d 714.) A community of purpose or common design may come as a result of either prior deliberation that the purpose or design be fulfilled by the commission of a specific offense, or the spontaneous and combined participation of a group in the perpetration of an offense. (*People v. Hill*, 53 Ill. App. 3d at 284.) The principle of accountability was set forth in *People v. Owens* (1975), 32 Ill. App. 3d 893, 895, 337 N.E.2d 60, where the court stated as follows:

> "In order to convict a person under accountability principles, the State must prove (1) that defendant 'solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses; (2) that this participation must have taken place either before or during the commission of the offenses; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses.' [Citation.] Presence at the scene is not culpable and knowledge that the crime is being committed is not such an affirmative act as to constitute aiding or abetting."

In addition to the above-stated rule of law, we are mindful of the fact that a reviewing court must examine the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461.) Moreover, a criminal conviction will not be reversed unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Young*, 128 Ill. 2d at 51.) Where inconsistencies and conflicts exist in the evidence, the trier of fact has the responsibility of weighing the credibility of the witnesses and resolving these conflicts and inconsistencies. (*People v. Green* (1989), 179 Ill. App. 3d 1, 17, 535 N.E.2d 413.) In a bench trial, this responsibility rests with the trial court, and the reviewing court will not substitute its judgment for that of the trier of fact when the evidence is merely conflicting. *People v. Daniels* (1984), 129 Ill. App. 3d 894, 898, 473 N.E.2d 517.

■ Applying these principles to the instant case, we find that the trial court's finding of guilt was not so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. Complainant testified that defendant unlocked the door, after which the two men entered his apartment, struggled with him and took his money. He indicated that, about several hours before the incident, defendant had been in his apartment and seen him remove a large roll of money from his left rear pants pocket. According to his testimony, the men knew where the money was, since they did not first search him but went directly to the pocket containing the money. Detective Marley testified that defendant told him that Selina suggested to her that they rob complainant. Pursuant to Selina's instructions, defendant went to the apartment and, after 15 minutes had passed, unlocked the door, thereby allowing the men to enter his apartment. Defendant told the detective that she was to receive $20 for her efforts. Defendant's testimony contradicted Detective Marley's testimony. According to defendant, there was no plan to rob complainant and she did not know that Selina was going to have someone go to complainant's apartment. However, she did acknowledge that she and Selina had talked about taking complainant's money, but that she thought that Selina was going to take the money after sleeping with him. Defendant indicated that if Selina got the money, she was going to give defendant $20 to repay a prior loan. The responsibility for weighing the credibility of these witnesses and resolving the conflicts between the testimony of Detective Marley and that of defendant rested with the trial court, and we will not substitute our judgment for that of the trial court when the evidence is merely conflicting. The testimony provided by complainant and Detective Marley established that defendant and Selina discussed and executed a plan to rob complainant. Conflicting testimony provided by defendant did not render their testimony so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. After reviewing the evidence in a light most favorable to the State, we find that defendant's conduct in unlocking the apartment door aided in the commission of the offenses, and that evidence of her prior discussion with Selina about taking complainant's money established that defendant did so with the specific intent to facilitate the commission of the offenses. Consequently, the State did prove defendant's accountability for the offenses beyond a reasonable doubt.

■ Defendant also contends that the State failed to prove beyond a reasonable doubt that a dangerous weapon was used in the commission of the offense of home invasion. Defendant was charged and con-

victed of two counts of home invasion in that she knowingly and without authority entered complainant's apartment knowing complainant was present and (1) while armed with a gun threatened the imminent use of force (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)) and (2) intentionally injured complainant in his apartment by striking him on the head with a hard object (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(2)). Defendant argues that the State failed to prove beyond a reasonable doubt that a gun was used. In support of her argument, defendant points out that complainant first testified that each of the two men who entered the apartment had a gun in his hand, but that complainant later testified that only one of the men had a gun. Defendant also points out that neither complainant nor Bebe could describe the gun, and that no gun was recovered from defendant. Although complainant's testimony may not have been clear as to whether there were one or two guns involved, he was certain that a gun was used. Moreover, it was for the trial court to resolve any conflicts or discrepancies in his testimony. (*People v. Green*, 179 Ill. App. 3d 1.) It is noteworthy that complainant initially testified that when the men entered the apartment, each man held a gun in his hand. Complainant subsequently testified that while he struggled with one of the men who held a gun, the other man hit him in the head with a hard object. A reasonable inference arises that such object was a gun. After examining complainant's testimony in a light most favorable to the State, we find that evidence of the use of a gun was not so unsatisfactory as to warrant a reasonable doubt that a gun was used.

■■ Defendant's final contention is that the trial court erred in convicting her of two counts of home invasion because both counts arose from the same physical act of a single entry into complainant's apartment. The State first contends that defendant waived this issue by failing to include it in her post-trial motion. The law provides that both trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) However, a court may take notice of plain errors or defects affecting substantial rights which were not brought to the trial court's attention. (*People v. Lowery* (1988), 177 Ill. App. 3d 639, 642-43, 532 N.E.2d 414.) The imposition of an unauthorized sentence affects substantial rights. (*People v. Lowery*, 177 Ill. App. 3d at 645.) Consequently, we will address the merits of defendant's claim.

■■ The State argues that the incident involved separate actions performed by two different offenders, and that defendant must be held accountable for the actions of both men. In considering this is-

sue, we note that the court has interpreted the home invasion statute to reflect the legislative intent to impose only one count of home invasion for one unlawful entry of one dwelling. (*People v. Yarbrough* (1987), 156 Ill. App. 3d 643, 509 N.E.2d 747; *People v. Govednik* (1986), 150 Ill. App. 3d 717, 502 N.E.2d 276.) Accordingly, had each of the men involved in the incident in the present case been charged, tried and convicted, each man would only have been convicted of one count of home invasion since each man made only one unlawful entry into the apartment. The State argues that defendant can be convicted on a separate count for each man. We disagree. Accountability is a legal theory whereby a defendant is held responsible for a crime which he personally did not commit, but which was committed by his accomplice. (*People v. Skiles* (1983), 115 Ill. App. 3d 816, 825, 450 N.E.2d 1212.) If the law places upon the accountable defendant all the liabilities arising from the acts of the accomplice, the law should also afford the accountable defendant the protections which would be afforded the accomplice, since the accountable defendant stands in the shoes of the accomplice. (*People v. Skiles*, 115 Ill. App. 3d at 826.) In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, the supreme court prohibited multiple convictions where more than one offense was carved from the same physical act. Because each of defendant's accomplices in the instant case made only one unlawful entry into complainant's apartment, each could have been convicted of only one count of home invasion. Recognizing that defendant has the same protections provided under *People v. King* (66 Ill. 2d 551, 363 N.E.2d 838) as do her accomplices, defendant cannot be convicted of two counts of home invasion. Accordingly, we vacate the judgment and sentence on one of the two counts of home invasion, reducing the two concurrent sentences of six years' imprisonment imposed for both counts to one six-year term.

For the foregoing reasons, we vacate one conviction for home invasion, and in all other respects we affirm the judgment of the circuit court.

Affirmed in part and vacated in part.

CERDA, P.J., and WHITE, J., concur.