THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOEY HICKS, Defendant-Appellant.

Second District    No. 2—95—0265

Opinion filed February 19, 1997.

GEIGER, P.J., concurring in part and dissenting in part.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, John X. Breslin, and Domenica A. Osterberger, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

Following a jury trial, defendant, Joey Hicks, was convicted of two counts of home invasion (720 ILCS 5/12—11(a)(2) (West 1994)).

The court sentenced him to the minimum six-year term of imprisonment. Defendant appeals, raising the following issues: (1) whether there was sufficient evidence supporting the conviction that was based on accountability; (2) whether the court erred in refusing to instruct the jury on the affirmative defense of defense of property; and (3) whether one of his convictions must be vacated because there was only one entry. We affirm and remand.

Officer Richard Johnson of the Aurora police department testified that at around 8:20 p.m. on June 18, 1994, he was dispatched to 606 N. Lancaster. A 911 call had been placed from that address, but the caller either hung up or was disconnected. When Johnson arrived, Michael Stewart was standing outside the house. Stewart had a swollen left eye and scratches on his body. Johnson went inside and found David Edmonds lying face up on the couch. Edmonds' head was bleeding, his left eye was swollen shut, his jaw was swollen, and he had cuts on his face.

Johnson testified that he observed shoe prints on the front door. There were rubber remnants, like pencil eraser shavings, on the prints. Johnson believed the prints were from tennis shoes. He identified a photograph as accurately depicting the shoe prints on the front door.

Michael Stewart testified that he knew defendant from when he used to live near him and that he knew a woman named Donna Hedge through defendant. He used to buy marijuana from Hedge, and on the date in question, he owed her $50 that he had borrowed to buy marijuana. According to Stewart, on June 18, 1994, he was riding his bike when defendant and Hedge pulled up in a car and began harassing him about the money he owed Hedge. Defendant was angry and told Stewart he was going to "get" him. Defendant jumped out of the car and began to chase Stewart on foot, while Hedge chased Stewart in the car. Stewart rode his bike to Edmonds' house and went inside. Edmonds is Stewart's girlfriend's brother.

Stewart looked outside and saw the car pulling up. John Davis was now with defendant and Hedge. Stewart then locked the front door. Davis, defendant, and Hedge came up to the door and asked for Stewart to come out, and Stewart kept saying no. Edmonds asked the trio what they wanted, and they kept pushing and kicking on the door, trying to force their way in. They were finally able to force their way inside. At the time, Stewart had just dialed 911. Defendant ripped the phone from Stewart's hand. Defendant then picked Stewart up, threw him into a bedroom, punched him, and stomped on his head. Defendant could see Davis beating Edmonds in the other room. Davis, defendant, and Hedge left after about 5 or 10 minutes. Stew-

art denied that he stole a gold chain from Hedge, and he denied hearing Davis, defendant, or Hedge yelling about the chain when they came to the door.

David Edmonds testified that on the evening in question Stewart had been at his house. Stewart left for about five minutes, and when he returned, three people pulled up in a car in front of the house. The people came up to the door and asked for Mike Stewart. Stewart went to the door, and Edmonds overheard him say that he could not let anyone in because he did not live there. When the people started pushing and kicking on the door, Edmonds and Stewart tried to hold it closed. They managed to get inside, and Edmonds told them to leave. Defendant then threw Stewart into a bedroom. Edmonds could hear grunts and groans coming from the bedroom. He was just standing there when Davis spun around and hit him. Edmonds tried to sit up, but Davis hit him again. Davis was hitting him with something that was cutting him. He suffered numerous cuts to the face and torn cartilage in his jaw. He went to the hospital and received stitches.

On cross-examination, Edmonds testified that when Davis, defendant, and Hedge were still outside the door, he heard them yelling something about a golden necklace and being ripped off. Edmonds also testified that the door was not locked when it was kicked, but rather was ajar, and that he and Stewart were trying to hold it closed.

Timothy Hedge testified for the defense. On the evening in question, he was working on a car at his girlfriend's (Jennifer Hester's) house. Davis was helping him. Timothy's sister, Donna, and her boyfriend (defendant) came over to get some tapes. Defendant and Hedge's children, Joe and Janice, were with them in their car. Hedge and the children were still in the car when Stewart rode up on his bicycle. Hedge and Stewart spoke for a few minutes, and then Timothy saw Stewart reach in the car and pull a necklace off Hedge's neck. Hedge then honked the car's horn. Defendant and Davis got in the car and went with Hedge after Stewart. The two kids were still in the car.

Jennifer Hester testified that on June 18, 1994, defendant and Hedge were coming over to borrow some Nintendo games. Hester took a game out to Hedge in the car while defendant went inside to look at the other games. Hedge's children were also in the car. As Hester was walking back toward the house, she saw someone pull up on a bicycle. She recognized him as Michael Stewart. Hester saw Stewart talking to Hedge, and then she saw Stewart reach into the car and then pull his hand out quickly. Stewart then "took off" on his bike. Hedge started honking the horn and yelling that someone had taken her chain. Hester went inside and told defendant that

Stewart was messing with Donna. Defendant left, and Hester did not see anything else. Hedge later told her that they got the chain back.

Denise Turner testified that on the evening of June 18, 1994, she and her fiancé, Noel Price, were out walking her dog near Barber Greene Park. Price pointed out a man coming around the corner on a bicycle and mentioned his name. A car was following the bicycle. Turner saw the bicyclist ride up to a house, throw his bike down, and run inside. Price told Turner that the people in the car looked like defendant and Hedge, who are acquaintances of Price and Turner. A third person and two children were also in the car. Turner saw defendant and the other man go up to the door and begin talking with someone. Turner could not hear the conversation. Turner then saw the two men walk inside, and she did not see any kicking, pushing, or fighting. Price substantially corroborated Turner's testimony. On cross-examination, Price admitted he was friends with defendant and had taken care of one of defendant's dogs.

Defendant testified that on the evening in question he was looking at some tapes at Jennifer Hester's house while Hedge and their children waited in the car. Defendant heard a car horn honking, and then Hester came inside and told him there was a problem. Defendant ran outside, and Hedge told him that Stewart had stolen her necklace. Defendant and Davis then got in the car. Defendant said he did not ask Davis to come along, but that Davis just got in the car because he knew him. They followed Stewart to a house on Lancaster Street.

Defendant and Davis went to the front door and knocked. Edmonds answered the door, and defendant asked him if Stewart was there. Edmonds said "hang on" and pushed the door most of the way closed. Edmonds then came back to the door and said that Stewart was in the bathroom. Defendant and Davis then walked into the house, and Edmonds did not object to their doing so. Defendant denied that anyone kicked the door. Defendant did not see anyone on the phone calling 911. When Stewart came out of the bathroom, defendant asked him if he had Donna's necklace. Stewart denied it. Defendant then told him that he knew he had it and to give it back. Defendant then followed Stewart into a bedroom. Again, defendant asked for the necklace, and Stewart said that he had dropped it. Defendant said if Stewart did not give it to him that he was going to take it. Stewart and defendant then struggled with each other, and defendant punched him once around the eye and once in the stomach. Stewart then pulled the chain out of his pants and gave it to defendant.

Defendant then went back toward the front door. Davis was

standing beside the front door, and Edmonds was on the couch. Edmonds appeared to be injured. Defendant never saw Hedge in the house. Defendant then left, dropped Davis back at Timothy Hedge's house, and went home.

The jury found defendant guilty of both counts of home invasion. Count I was based on defendant's accountability for Davis' entry and attack on Edmonds; count II was based on defendant's own entry and attack on Stewart. The court sentenced defendant to the minimum six-year term of imprisonment and agreed to recommend him for impact incarceration. Although the court entered "judgment on the convictions," it gave defendant only one sentence.

On appeal, defendant first argues that the conviction based on his accountability for Davis' assault on Edmonds must be reversed outright. Defendant contends that he did not know that Davis would attack Edmonds and that there was insufficient evidence to find him accountable for Davis' actions. We disagree.

■ When a defendant challenges the sufficiency of the evidence supporting his conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A person can be held accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1994). Mere presence or acquiescence is not sufficient to render a person accountable for the acts of another. *People v. Howard*, 209 Ill. App. 3d 159, 184 (1991). The State has met its burden of proving that a defendant intended to promote or facilitate an offense where it establishes that the defendant shared the criminal intent of the principal or where there was a community of unlawful purpose. *People v. Merritte*, 242 Ill. App. 3d 485, 491 (1993). Additionally, under the "common design rule," when two or more people engage in a common criminal design, any acts in furtherance thereof committed by one party are considered the acts of all parties to the common design and all are accountable for those acts. *People v. Martin*, 271 Ill. App. 3d 346, 351 (1995).

■ We believe there was sufficient evidence for the jury to find defendant accountable for Davis' actions. The evidence established that defendant and Davis' objective was to force their way into Edmonds' house and either beat Stewart because of the drug debt or to take the necklace back by force. Davis and defendant forced their way into

the house together, and once inside Davis beat Edmonds and defendant beat Stewart. We do not believe that defendant is absolved of responsibility for Davis' actions merely because he testified that he did not know that Davis would beat Edmonds. As previously stated, the State can sustain its burden of proof by showing that there was a "community of unlawful purpose," which Davis and defendant clearly had. Further, Davis and defendant were engaged in a common criminal design. Under the common design rule, any actions that Davis took in furtherance of the common design are the actions of defendant. Here, the jury could have inferred that Davis beat Edmonds to ensure that he would not try to aid Stewart. We find that the evidence was sufficient to sustain defendant's conviction of home invasion based on his accountability for Davis' actions.

■ Defendant next argues that he should be given a new trial on the other home invasion count because the court erred in refusing his tendered instruction on the affirmative defense of defense of property. The affirmative defense of defense of property is set out in section 7—3 of the Criminal Code of 1961 (720 ILCS 5/7—3 (West 1994)):

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with either real property (other than a dwelling) or personal property, lawfully in his possession or in the possession of another who is a member of his immediate family or household or of a person whose property he has a legal duty to protect. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent the commission of a forcible felony."

A defendant is entitled to an instruction on an affirmative defense if there is even slight evidence to support the defense. *People v. Alexander*, 250 Ill. App. 3d 68, 76 (1993). Defendant claims that he was entitled to the instruction because the evidence showed that he was "terminating" Stewart's criminal interference with personal property.

■ After carefully reviewing the record, we conclude that defendant was not entitled to the requested instruction. This is a case in which the alleged crime had already occurred, and Stewart had fled the scene and entered a residence. We are of the opinion that the legislature did not intend to permit people in defendant's position to enter a residence and beat the occupants to retrieve stolen property. Defendant argues that such an interpretation renders superfluous the word "terminate," because it would give "terminate" and

"prevent" the same meaning. We disagree. "Prevent" would refer to stopping the crime before it actually happened, while "terminate" would refer to stopping the crime while it is happening. Here, the alleged crime was complete, and Stewart had entered a residence. We further note that a defendant must have a *reasonable* belief that his conduct is *necessary* to prevent or terminate another's criminal interference with property. If Stewart really did steal a necklace from Hedge, then once defendant observed Stewart enter Edmonds' house the proper course of action would have been for defendant to contact the police rather than resorting to self-help tactics. Under these facts, defendant could not have had a reasonable belief that his conduct was necessary. The trial judge did not err in refusing defendant's proposed instruction.

■ Finally, defendant contends that one of his convictions must be vacated because there was only one entry. He cites *People v. Cole*, 172 Ill. 2d 85, 102 (1996), for the proposition that only one count of home invasion may be carved from a single entry, even if multiple victims are injured following the entry. We have no quarrel with the rule stated by defendant, except that it does not apply to his case. Here, there were two entries—defendant's and Davis'. Defendant and Davis each committed a home invasion; each of them entered a dwelling and caused injury to a person within the dwelling. Defendant was convicted of one count of home invasion based on his attack on Stewart and another count based on his accountability for Davis' attack on Edmonds. There were two entries and two crimes, and both convictions can stand.

The Appellate Court, First District, has reached a different conclusion on slightly different facts. In *People v. Brown*, 197 Ill. App. 3d 907 (1990), Brown was convicted of two counts of home invasion. Brown had unlocked the door to an elderly man's apartment and allowed two men to enter, to hit the man on the head, and to steal his money. The first district vacated one of the convictions, relying on the rule that one entry will support only one home invasion conviction. However, *Brown* relied on cases in which only one person entered a dwelling. *Brown* seemed to confuse multiple *occupants* with multiple *entrants* and thus offered no explanation for its assumption that only one entry had occurred. We believe that in *Brown*, as here, there were two entries. We cannot agree with *Brown*'s assumption that two people entering a dwelling to commit a crime is only one entry.

*Brown* offered an additional explanation for its holding. The court held that, since each of the two men who entered the apartment could be convicted of only one count of home invasion, defendant also

could be convicted of only one count. The court relied on *People v. Skiles*, 115 Ill. App. 3d 816, 826 (1983), which held that an accountable defendant is entitled to the same protections that would be afforded his accomplice, and *People v. King*, 66 Ill. 2d 551 (1977), in which the supreme court prohibited multiple convictions where more than one offense was carved from the same physical act. Again, we find that *Brown*'s conclusion rests on a faulty premise. The court did not explain why each of the two entrants could only be convicted of one count of home invasion. There, as in our case, each entrant could have been convicted of one count of home invasion based on his own entry and another count based on his accountability for the other person's entry. *Brown* would not have been carving more than one offense from the same physical act because the defendant's home invasion convictions were based on separate entries. We decline to follow *Brown* because we believe it was based on flawed reasoning and incorrect assumptions. Here, both of defendant's convictions can be sustained. They were based on two different entries, and thus the "one act, one crime" rule was not implicated.

■ As an additional matter, we must remand the cause so that the trial court can enter another sentence. The court entered judgment on both convictions, but gave defendant only one sentence.

The judgment of the circuit court of Kane County is affirmed, and the cause is remanded for the entry of another sentence.

*Affirmed and remanded.*

THOMAS, J., concurs.

PRESIDING JUSTICE GEIGER, concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority's opinion which holds that the entry was two separate chargeable entries in the instant case. Instead, I believe that the defendant's and Davis' conduct constituted only one entry for purposes of the home invasion statute (720 ILCS 5/12—11 (West 1994)). I would therefore follow the holding of *People v. Brown*, 197 Ill. App. 3d 907, 919 (1990), and find that only one home invasion conviction can stand where there is only one entry, regardless of the total number of persons who enter.

In *People v. Cole*, 172 Ill. 2d 85, 102 (1996), our supreme court interpreted the language of the home invasion statute (720 ILCS 5/12—11 (West 1994)) and concluded "that a single entry will support only a single conviction, regardless of the number of occupants." On the basis of this principle, numerous courts have held that only

one home invasion conviction can stand even where the defendant has injured multiple individuals during a single entry. See *People v. Yarbrough*, 156 Ill. App. 3d 643, 646 (1987); *People v. Morrison*, 137 Ill. App. 3d 171, 177-78 (1985).

Therefore, had the defendant herein acted alone in inflicting the injuries suffered by Stewart and Edmonds, he could only have been convicted of one count of home invasion. Yet, because another individual entered the premises with him at the same time, the majority concludes that the defendant was properly convicted of two counts of home invasion. I agree with the courts in *Brown*, 197 Ill. App. 3d at 919, and *People v. Smith*, 275 Ill. App. 3d 207, 213-14 (1995), that these two results are irreconcilably inconsistent.

For these reasons, I would vacate one of the defendant's convictions of home invasion.