**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190470-U

Order filed November 1, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal Nos. 3-19-0470 and 3-19-0471 |
| v. | ) ) ) | Circuit Nos. 18-CF-391 and 18-CF-392 |
| MICHAEL S. MONTOYA, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice O'Brien and Justice Hauptman concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's statutory right to a speedy trial was not violated. Counsel did not provide ineffective assistance.

¶ 2   Defendant, Michael S. Montoya, argues that the Peoria County circuit court erred in denying his motion to dismiss based upon a violation of his statutory right to a speedy trial. He further argues that defense counsel provided ineffective assistance by: (1) surrendering his bond

in case No. 18-CF-349; (2) joining case Nos. 18-CF-391 and 18-CF-392 for trial; and (3) admitting in opening statements that defendant possessed drugs. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant in case No. 18-CF-391 with: (1) armed violence (720 ILCS 5/33A-2(a) (West 2018)) alleging that while armed with a handgun he unlawfully possessed cocaine; (2) unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)); and (3) unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). In case No. 18-CF-392, the State charged defendant with: (1) attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018)) alleging he personally discharged a firearm at Rex Monroe; and (2) aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). The charges in case No. 18-CF-392 arose out of defendant's alleged act of shooting at Monroe. The charges in case No. 18-CF-391 arose out of defendant's encounter with the police shortly after he allegedly shot at Monroe wherein an officer saw defendant with a gun and found drugs on him after he was apprehended.

¶ 5        Defendant was out of custody on bond in case No. 18-CF-349 on July 3, 2018, when he was arrested in case Nos. 18-CF-391 and 18-CF-392. On July 5 the court appointed the public defender to represent defendant. The matters were set for arraignment on July 18, but were continued at the defense's request because defendant had hired private counsel who was not available that day. At the continued hearing on July 23 the matter was again continued on defense counsel's motion, as the defense had several outstanding motions to substitute judge in the cases. On July 26, due to defendant's motions for substitution of judge, the court indicated it was referring the matters to the chief judge for reassignment. The chief judge assigned a new judge on July 30 and the parties appeared before that judge for arraignment on August 2. On that date, defense counsel surrendered defendant's bond in case No. 18-CF-349 and the court

2

explained to defendant that counsel wanted to surrender the bond "so that from this day forward, at least any time that you're doing, counts toward this case too; otherwise, it looks like you're not getting any time on this." The court further explained that if bond was not surrendered and the other charges "went away" it would look like he did not spend any time in jail for case No. 18-CF-349. Defendant replied "Okay. Thank you." Defense counsel did not express any disagreement with the court's explanation.

¶ 6        Also on August 2, the State elected to proceed on case No. 18-CF-392 first, but on September 27, it changed its election to case No. 18-CF-349. Defense counsel objected to the State's change of election. The matter was set for November 13 for trial. The court noted that "[t]he parties agree that [the] State will have 75 days tallied against them as of October 1st ***, Of your 120 days, 75 days will be used up by October 1st against the State. So your November 13th will be barely but it'll be within the 120 days then." The court further noted that once case No. 18-CF-349 concluded, the State would have 160 days to bring defendant to trial on the other charges.

¶ 7        On November 13, trial commenced on case No. 18-CF-349. The jury found defendant guilty of several of the charges.

¶ 8        Subsequently, defense counsel moved to join case Nos. 18-CF-391 and 18-CF-392 for trial. The motion argued that the charges in both cases occurred in the same vicinity, within 23 minutes of each other and that it was most likely the cases would have the same arresting officer, and similar testimony and evidence.

¶ 9        The court sentenced defendant in case No. 18-CF-349 on December 19. On the same day, the court addressed defendant's motion to join case Nos. 18-CF-391 and 18-CF-392. In presenting argument, defense counsel stated "it's the same gun in both. It's the same evidence in

3

both; that's why the cases overlap. *** [so] I felt it was best to keep them together rather than split them up and give them two shots to force my client to defend himself on two cases rather than one."[1] The court granted the motion.

¶ 10 On April 29, 2019, the day set for trial on case Nos. 18-CF-391 and 18-CF-392, defendant filed a motion to dismiss alleging a violation of his statutory right to speedy trial. He argued that the State's change of election was subterfuge to gain more time to prosecute defendant on case Nos. 18-CF-391 and 18-CF-392. Defense counsel agreed that the State had brought defendant to trial within 120 days on one of defendant's pending cases, but he argued that the time during which the State had elected on case No. 18-CF-392 counts against the time within which the State must take him to trial following the conclusion of case No. 18-CF-349, such that the State missed the deadline. The State argued that it did not engage in subterfuge and changed its election because it "wasn't going to get the labs back in time." The court denied the motion and the matter proceeded to a jury trial on that date. During opening statements, defense counsel stated "[t]he only thing we'll admit to of the five charges is my client will admit when he was searched by the police there at the intersection of Peoria and Nebraska he did have some drugs on his person," but that he believed the jury would find defendant not guilty of the remaining four charges.

¶ 11 Officer Nicholas Mason testified that he witnessed another officer search defendant and find suspected drugs on him. Mason turned the suspected drugs over to Sergeant Erin Barisch.

---

[1]This information comes from a transcript that is contained in the record on appeal for case No. 18-CF-349, which is appellate court case No. 3-19-0469, and we take judicial notice of it. See *In re Marcus S.*, 2022 IL App (3d) 170014, ¶ 46, n.4 (stating that "[w]e may take judicial notice of the record in another case involving the same party or of public documents contained in the record of any other judicial proceeding if doing so would aid us in deciding the instant appeal" and noting the court may take judicial notice *sua sponte*).

¶ 12    Officer Lance Skaggs testified that he learned from Barisch that drugs were found on defendant. Skaggs transported the drugs to, and picked them up from, the Morton crime laboratory. Skaggs identified People's exhibit No. 1 as a package in evidence. Skaggs noted "[i]t's got the case number on it. The tag number as you can see. There's a number here that tells us by the report and what the tag number is, and it says plastic knotted baggy with two smaller plastic knotted baggies inside, suspect crack cocaine." Skaggs filled out the tag. His name and badge number were on the tag.

¶ 13    Julie Edwards testified she was employed with the Springfield forensic laboratory. Edwards had seen People's exhibit No. 1 previously and could identify it because her initials were on the sticker, and the bag contained purple markings that she had made. She received the evidence from Joanne Liu, the director of the Morton crime laboratory, who routinely transported items between the laboratories. When Edwards received the evidence, it was in a bag that was heat sealed. It was in substantially the same condition at trial as when she last saw it. Edwards placed the evidence inside the drug chemistry vault until she was ready to work on it and then she moved it to her desk. Edwards analyzed the evidence and concluded it was cocaine. When she was finished with her analysis she placed it in a new plastic bag, then the original evidence bag and sealed it.

¶ 14    The State moved to admit exhibit No. 1, and defense counsel objected, arguing that the State did not present a sufficient chain of custody. The court admitted the evidence. It stated

"The witness testifies that she's an expert *** at the Springfield office and followed the protocol that allows for that.

When evidence is transferred, it doesn't have to be person to person to person, but it could be place to place to place so long as it's secured, and it

appears that there was no interruption in the evidence from Ms. Liu from the crime lab to this witness and it circulated back."

¶ 15 During the course of trial, defense counsel made objections, cross-examined witnesses, and presented a defense witness.

¶ 16 During closing argument, when arguing that it had proved the offense of armed violence, the State noted that one proposition it needed to prove was that defendant unlawfully possessed a controlled substance and that defense counsel admitted that in opening statements. Defense counsel objected stating that what he said during opening statements is not evidence. The court noted that counsel had conceded it in opening statements.

¶ 17 The jury found defendant guilty on all charges. Defendant filed a motion for new trial arguing, among other things, that the court erred by (1) allowing People's exhibit No. 1 into evidence over defense's objection regarding chain of custody, and (2) denying defendant's motion to dismiss due to a violation of his statutory right to speedy trial. The court denied the motion. It sentenced defendant to concurrent terms of imprisonment of 28 years for attempted first degree murder, 15 years for armed violence, and 6 years for UPWF. It did not enter a judgment for unlawful possession of a controlled substance or aggravated discharge of a firearm. Defendant appealed and case No. 18-CF-391 was docketed as appellate case No. 3-19-0470 and case No. 18-CF-392 was docketed as appellate case No. 3-19-0471. On defendant's motion, this court consolidated the appeals.

¶ 18                                II. ANALYSIS

¶ 19                                A. Speedy Trial

¶ 20 Defendant argues that the court erred in denying his motion to dismiss based upon a violation of his statutory right to a speedy trial. He argues that when the State changed its

6

election, the clock did not reset to zero in case No. 18-CF-392 and that it was instead tolled until case No. 18-CF-349 concluded on December 19. At that time, he argues, the State already had 56 days against its 160-day clock to bring defendant to trial, and when it then took another 131 days to bring him to trial on April 29, it exceeded the 160-day time period.

¶ 21    Section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) provides that "[e]very person in custody *** for an alleged offense shall be tried *** within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2018). Pursuant to section 103-5(e),

> "[i]f a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subsections (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered." *Id.* § 103-5(e).

¶ 22    Per the statute, because defendant was in simultaneous custody on more than one pending charge, the State needed to bring him to trial on one charge before expiration relative to any of such pending charges of the period prescribed by subsection (a), which is 120 days. The parties do not dispute that defendant was brought to trial on case No. 18-CF-349 prior to the expiration of the 120-day period. Additionally, the record reveals that defendant was brought to trial within 120 days, regardless of whether the 120-day period was calculated from the time defendant was taken into custody for case Nos. 18-CF-0391 and 18-CF-392 on July 3, 2018, or from when he

surrendered bond for case No. 18-CF-349 on August 2, 2018. Specifically, the time period from August 2 to the November 13, 2018, trial date was 103 days, clearly within 120 days. The time period from July 3 to November 13, 2018, was 133 days. However, when delays attributable to defendant—the 15 days when he sought continuances so that private counsel could appear and moved to substitute judge—are removed, the days attributable to the State total 118. Notably, the court's statement that the parties agreed that 75 days were tallied against the State as of October 1, 2018, recognizes that there were 15 days of delay attributable to defendant. Based on the foregoing, it is clear that defendant was brought to trial on one charge before the expiration of the period prescribed by subsection 103-5(a).

¶ 23    Per section 103-5(e) of the Code, at the point that case No. 18-CF-349 concluded when defendant was sentenced on December 19, the State had 160 days to bring defendant to trial on the joined case Nos. 18-CF-391 and 18-CF-392. The parties agree that the trial began 131 days later, on April 29. Therefore, defendant was tried on case Nos. 18-CF-391 and 18-CF-392 within 160 days of the date on which the judgment in case No. 18-CF-349 was rendered. While defendant seems to argue that this does not account for the 56 days that the State had elected on case No. 18-CF-392 and that those 56 days should count against the 160-day time limit, those 56 days applied to the first 120-day period in which the State needed to bring defendant to trial on any one of the pending charges and cannot be counted a second time. See, *e.g.*, *People v. Beard*, 271 Ill. App. 3d 320, 327-28 (1995) (noting, where the State changed its election three times, that defendant presented no authority that the State could not change its election more than once before the expiration of the statutory time period and that since defendant was tried 139 days after the verdict on the first charge brought to trial, there was no violation of the 160-day time period).

8

¶ 24                              B. Ineffective Assistance of Counsel

¶ 25        Defendant argues that defense counsel provided ineffective assistance by:

(1) surrendering his bond in case No. 18-CF-349 which deprived him of his statutory right to a

speedy trial on case No. 18-CF-392; (2) joining case Nos. 18-CF-391 and 18-CF-392 for trial

because the jury learned prejudicial information that would not have been admissible in case No.

18-CF-392; and (3) admitting in opening statements that defendant possessed drugs.

¶ 26        "Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must

show that (1) counsel's representation fell below an objective standard of reasonableness, and

(2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair

trial." *People v. Horton*, 143 Ill. 2d 11, 23 (1991). "The failure to satisfy either the deficiency

prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of

counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000). "To show actual prejudice, defendant must

establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome.' " *Horton*, 143 Ill. 2d at 23 (quoting

*Strickland v. Washington*, 466 U.S. 668, 694 (1984)). However, the two-part test need not be

applied "[w]here 'counsel entirely fails to subject the prosecution's case to meaningful

adversarial testing ***.' " *People v. Hattery*, 109 Ill. 2d 449, 461 (1985) (quoting *United States

v. Cronic*, 466 U.S. 648, 659 (1984)). *Hattery*'s ruling is to be narrowly construed and

"defendant 'faces a high burden before he can forsake the two-part *Strickland* test.' " *Horton*,

143 Ill. 2d at 24 (quoting *People v. Johnson*, 128 Ill. 2d 253, 270 (1989)). " 'Matters of trial

strategy are generally immune from claims of ineffective assistance of counsel.' " *People v.

Manning*, 241 Ill. 2d 319, 327 (2011) (quoting *People v. Smith*, 195 Ill. 2d 179, 188 (2000)).

¶ 27                          1. Decision to Surrender Bond on Case No. 18-CF-349

¶ 28          Defendant argues that the sentences on his charges were mandatorily consecutive, such that there was no strategic reason for counsel to surrender bond on case No. 18-CF-349 and that he was prejudiced by the surrender of bond because it deprived him of his statutory right to a speedy trial on case No. 18-CF-392. Specifically, he argues that had bond not been surrendered on case No. 18-CF-349, the State would have had to bring him to trial within 120 days on case No. 18-CF-392, which the State could not do because the reason it changed its election was that it would not get the laboratory results back in time for case No. 18-CF-392.

¶ 29          Contrary to defendant's argument that there was no strategic reason to surrender bond, the strategic reason to do so was to ensure that defendant would receive credit for case No. 18-CF-349 for the time he spent in custody. While defendant asserts that he would not have been able to get credit for case No. 18-CF-349 because the sentence in that case would be mandatorily consecutive to case Nos. 18-CF-391 and 18-CF-392, that presupposes that he would be found guilty in those matters. If counsel did not surrender bond, and, as the court noted, case Nos. 18-CF-391 and 18-CF-392 "went away," then defendant would not get any credit for case No. 18-CF-349. See *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987) (concluding "that a defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge until his bond is withdrawn or revoked"). Additionally, counsel's decisions are to be judged at the time they are made instead of in hindsight, such that counsel here cannot be faulted for failing to foresee, at the time he surrendered bond, that the State would change its election and thereby delay the trial in case No. 18-CF-392. See *People v. Perry*, 224 Ill. 2d 312, 344 (2007) (providing that counsel's performance should be evaluated "from his perspective at the time, rather than through the lens

10

of hindsight"). Notably, this court has indicated that counsel may provide ineffective assistance when he fails to surrender bond in situations like that involved here. See, *e.g.*, *People v. Nesbit*, 2016 IL App (3d) 140591, ¶ 47. In light of the foregoing, we conclude that counsel had a valid strategic reason to surrender bond at the time he did so. Therefore, his representation did not fall below an objective standard of reasonableness and defendant's ineffective assistance claim fails. See *Enis*, 194 Ill. 2d at 377.

¶ 30                          2. Decision to Join Case Nos. 18-CF-391 and 18-CF-392 for Trial

¶ 31          Defendant argues that counsel provided ineffective assistance by moving to join the trials in case Nos. 18-CF-391 and 18-CF-392 because if they were tried separately the jury in case No. 18-CF-392 would not have learned about his prior felony or that he possessed drugs.

¶ 32          Here, defense counsel's decision to join the cases was clearly a matter of trial strategy, and counsel explained his reasoning that the same gun was involved in both cases, the cases overlapped, and he believed it was better to try the cases together rather than make defendant defend himself twice. See, *e.g.*, *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10 ("Generally, a defense decision not to seek a severance, although it may prove unwise in hindsight, is regarded as a matter of trial strategy. [Citation.] A major disadvantage of a severance is that it gives the State two bites at the apple. An evidentiary deficiency in the first case can perhaps be cured in the second."). We cannot say that this strategy fell below an objective standard of reasonableness and therefore, defendant's ineffective assistance of counsel claim fails. See *Perry*, 224 Ill. 2d at 344 (stating that "a reviewing court will be highly deferential to trial counsel on matters of trial strategy").

¶ 33                                  3. Opening Statement

¶ 34        Defendant argues that counsel provided ineffective assistance by admitting, during

opening statements, that defendant possessed drugs, which undermined a "meritorious" argument

that the State did not establish a continuous chain of custody regarding the cocaine evidence

admitted as People's exhibit No. 1 at trial.

¶ 35        Defendant first relies on *Hattery* to argue that because counsel admitted defendant

possessed drugs, he failed to subject the State's case to meaningful adversarial testing. But

counsel vigorously defended defendant by making objections, cross-examining witnesses,

presenting a witness on defendant's behalf, and objecting to the admittance of People's exhibit

No. 1 into evidence. Thus, he did not fail to subject the State's case to meaningful adversarial

testing and this claim must be analyzed under *Strickland*. See *Horton*, 143 Ill. 2d at 23 (noting

that it is not *per se* ineffectiveness when counsel concedes defendant's guilt to an offense where

there is overwhelming evidence and concluding that counsel did not entirely fail to subject the

prosecution's case to meaningful adversarial testing where counsel cross-examined a witness and

filed a pretrial motion to suppress).

¶ 36        Here, even if defendant could establish counsel's admission was not a reasonable trial

strategy (see, *e.g.*, *People v. Brown*, 197 Ill. App. 3d 907, 914 (1990) (noting that "courts have

recognized the legitimacy of admitting guilt to less than all counts in a multicount indictment or

less than all elements of the crime(s) charged where evidence of defendant's guilt is

overwhelming and counsel's strategy is to win a reduced sentence" and stating "[s]uch a tactical

decision is not objectionable *per se*, and may even be viewed as good defense strategy when

appropriate"), he cannot establish prejudice. Defendant's claim of prejudice is that counsel's

admission "undermined the legitimate foundational challenge to the admission of People's

12

Exhibit 1" and "[t]he court may have paid more careful attention to the chain of custody, or lack thereof, if defense counsel had not already conceded the issue in opening statements." He further asserts that exclusion of People's exhibit No. 1 would have left the jury without the evidence of cocaine necessary to establish armed violence or unlawful possession of a controlled substance such that it is reasonably likely he would have been acquitted absent counsel's admission.

¶ 37 This convoluted argument misses the mark. The court's ruling regarding the admissibility of People's exhibit No. 1 did not rely on counsel's admission. Rather, the court simply found that a sufficient chain of custody had been established, such that there is no indication that counsel's admission had any bearing on the court's decision to admit People's exhibit No. 1 into evidence. Thus, there is no reasonable probability that People's exhibit No. 1 would have been excluded absent counsel's admission and therefore, no reasonable probability that the outcome of the proceedings would have been different absent the admission. Based on the foregoing, defendant has failed to establish prejudice and his ineffective assistance claim fails. See *Horton*, 143 Ill. 2d at 23; *Enis*, 194 Ill. 2d at 377.

¶ 38 Notably, while defendant attempts to tie the chain of custody issue in with counsel's opening statement admission, he does not clearly make a separate argument that the matter should be reversed due to the purportedly improper admission of People's exhibit No. 1. To the extent defendant was attempting to do so, the argument lacks merit.

¶ 39 The circuit court's ruling on the sufficiency of the chain of custody is reviewed for an abuse of discretion. *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 22. In establishing the chain of custody,

> "[t]he State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance

13

tested by the forensic chemist. [Citation.] Unless the defendant produces evidence of actual tampering, substitution or contamination, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination; the State must demonstrate, however, that reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered." *People v. Woods*, 214 Ill. 2d 455, 467 (2005).

¶ 40        Here, Officer Skaggs testified that he transported the suspected drugs recovered from defendant to and from the Morton crime laboratory. He identified People's exhibit No. 1 as the suspected drugs and noted that he filled out the tag for the evidence, which included his name, badge number, and case number. Edwards, who tested People's exhibit No. 1, identified it by her initials and purple markings she had made and noted that it was in substantially the same condition as when she last saw it. She further testified that she received the evidence from Director Liu who routinely transported items between the Morton and Springfield laboratories. Additionally, People's exhibit No. 1 was sealed when Edwards received it, and she resealed it when she was done with her analysis. In light of Skaggs' and Edwards' testimony the State demonstrated that reasonable measures were employed to protect the evidence, and we cannot say the court abused its discretion in determining that the State established a sufficient chain of custody and allowing People's exhibit No. 1 to be admitted into evidence.

¶ 41                                    III. CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 43        Affirmed.

14